1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROSEMARIE COLE, ) | Case No.: C 11-05378 PSG |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANT'S** |
| v. ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |
| THE PERMANENTE MEDICAL GROUP, ) | |
| INC., a California corporation; KAISER ) | **(Re: Docket No. 41)** |
| PERMANENTE MEDICAL GROUP, INC., a ) | |
| California corporation, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Defendant The Permanente Medical Group, Inc. ("TPMG"), a California corporation,

moves for summary judgment pursuant to Fed. R. Civ. P. 56(a) on the employment discrimination

claims brought by Plaintiff Rosemarie Cole ("Cole").[1]  Cole opposes the motion.[2]  Having

considered the parties' papers, the court GRANTS TPMG's motion.

## I.       BACKGROUND

This action arises from Cole's termination as an Advice Nurse in TPMG's Call Center.

Cole claims that her termination was the result of TPMG's intent to interfere with her receipt of

additional pension benefits under the Employee Retirement Income Security Act ("ERISA").[3]

_____

[1] *See* Docket No. 41.

[2] *See* Docket No. 46.

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TPMG maintains that Cole's firing was because Cole violated company confidentiality policies on multiple occasions.[4]  The court begins by recounting Cole's undisputed employment history at TPMG and the undisputed events leading up to her termination.

**A.    Cole's Employment at TPMG**

Since June 3, 1996, Plaintiff was employed by TPMG as an Advice Nurse in TPMG's call center.[5]  Advice Nurses respond to calls that TPMG's members make to the phone number (the "Dedicated Line") listed in membership agreements, information materials, and the website.[6] When calls come in on this Dedicated Line, Advice Nurses access members' electronically stored medical information in a program called CIPS, which requires the nurse's identification number, confidential password, and a member's unique member identification number.[7]  Authorization to use the computers to access information is only for the purpose of responding to calls,[8] and all calls on the Dedicated Line are recorded and preserved.[9]

TPMG has two written policies, which are distributed to Advice Nurses on an annual basis.[10]  The Obligations Regarding Confidentiality Policy Section V.D.2 states:

> Access to medical information is permitted only as needed to provide medical care to members and patients, or as necessary in the regular course of business . . . Covered persons . . . may not retrieve . . . medical information about another individual without the individual's written authorization.[11]

---

[3] *See* Docket No. 1.

[4] *See* Docket No. 41.

[5] *See* Docket No. 1 at 2.

[6] *See* Docket No. 43 ¶ 2.

[7] *See id.* ¶ 3.

[8] *See id.* ¶ 4.

[9] *See id.*

[10] *See* Docket No. 41 at 3.

[11] *See* Docket No. 43 Ex. A at 2.

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

The Electronic Asset Usage policy similarly states that employees may not use their computer terminals to access patient medical information "except as authorized in accordance with established processes and only for business or medical care reasons."[12]  There was also an informational bulletin that was distributed to Cole and other advice nurses in October 2009, which stated: "Your relatives can give you permission to view their records, but it must be in writing and would only be permitted by going to the facility where you get care and completing an authorization form."[13]  Advice nurses are required to undergo annual training that consists of multiple interactive screens with answers to a series of questions.[14]  One of these screen shots includes an example and provides the correct answer, "It is not permissible to share [medical] information because the cousin has not given written or oral permission to do so."[15]  Cole completed this training in June 2009 and again in August 2010.[16]  Whenever an Advice Nurse logs into the CIPS program, a notice pops up stating that medical information is confidential and restricted to situations in which it is necessary to perform job responsibilities.[17]

As an Advice Nurse, Cole is a beneficiary under the Employee Pension Plan established and maintained by TPMG.[18]  Her pension rights under the retirement plan vested at her fifth service year, and she is entitled to higher pension payments upon reaching ten and fifteen years of

---

[12] *See id.* Ex. B, at 3.

[13] *See id.* ¶ 8.

[14] *See id.* ¶ 9, Exs. G-H.

[15] *See* Docket No. 52, Ex. 2 at 52:10-24, 53:1-3.

[16] *See* Docket No. 43 ¶ 9, Exs. G-H.

[17] *See id.* ¶ 7.

[18] *See* Docket No. 10 ¶¶ 8, 23.

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

service.[19]   Cole stated that she planned to retire June 3, 2012 when she would have attained fifteen years of service and qualified to receive retiree health insurance.[20]

In September, 2010 Cole's husband, Larry Nelson ("Nelson"), registered a complaint to TPMG's Member Services that accused Cole of improperly gaining access to his information.[21] Nelson is a non-practicing attorney who is a member/patient of TPMG with rights to access his medical records.[22]   Cole allegedly obtained a Temporary Restraining Order against Mr. Nelson on or about April 23, 2010 and finalized their divorce in November, 2010.[23]   Following Nelson's complaint, TPMG's Senior Operation RN Manager ("RN Manager") asked the administrative staff to conduct an investigation, which revealed that Cole had accessed CIPS of her husband on twelve different dates from May to September 2010 and made two separate entries into CIPS of a former member, W.M.[24]   None of these entries were associated with incoming calls on the Dedicated Line.[25]

The RN Manager met with Cole, her union stewards, and a labor relations consultant on October 25, 2010 and November 11, 2010 to discuss the entries.[26]   Cole explained that she made the entries into her husband's information when he requested she do so on her personal cell phone.[27]   She claimed he was verbally abusive and that she had acquiesced in order to "keep the

---

[19] *See* Docket No. 45 Ex. K at 48-49, 51, 55-56.

[20] *See id.*

[21] *See id.* at 3-4.

[22] *See* Docket No. 1 at 3.

[23] *See id.*

[24] *See* Docket No. 43 ¶¶ 10-12.

[25] *See id.* ¶ 12.

[26] *See id.* ¶ 13.

[27] *See id.* ¶ 14.

4

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

peace."[28]  She did not believe that she had done anything wrong, because she did not recall any

policies against this type of action.[29]  As to the entry into W.M.'s records, Cole first stated that

another nurse must have accessed her computer while she was on break and, contrary to policy, had

failed to lock the computer.[30]  When TPMG showed her records that the W.M entries were made

when she was not on break, she then surmised that she may have "fat-fingered" W.M.'s number

when intending to type a different member number.[31]  TPMG did not accept this explanation,

because two separate entries were made that were separated by forty-five minutes and during each

of the entries, two or more screens were accessed.  Furthermore, the member ID numbers of

members who made incoming calls just before and after the entries at issue were significantly

different from W.M.'s member number.  The RN Manager, feeling that Cole committed a knowing

violation of company policy and that she had no credible explanation for the entries into W.M.'s

records, terminated Cole's employment on November 18, 2010.[32]  Up until that time, Cole had

never been subject to any disciplinary actions.[33]

After the California Nurses Association ("CNA") filed its grievance over Cole's

termination, the CNA representative, Debra Grabelle, asked for information concerning other

nurses who had not been terminated for committing medical privacy violations.[34]  TPMG supplied

a list of nurses that were not fired for similar confidentiality violations, which provides the date of

the discipline, the location where the nurse was employed, and the form of discipline that was

---

[28] *See id.*

[29] *See id.*

[30] *See* Docket No. 52 Ex. 5.

[31] *See* Docket No. 43 ¶ 13.

[32] *See* Docket No. 43 ¶ 15.

[33] *See* Docket No. 52 ¶ 3.

[34] *See id.* Ex. 5.

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

received.[35]  It does not provide any individual information regarding the nurses, such as the date at which their pensions would have vested.[36]  The CNA declined to take the matter to arbitration.[37]

**B.     Administrative Proceedings**

After being discharged, Cole filed for unemployment insurance, which was granted and then appealed by TPMG.[38]  A hearing was held, where both testimonial and documentary evidence were admitted.[39]  The California Unemployment Insurance Appeals Board ("Appeals Board") found that Cole had accessed her husband's records at his request.[40]  It also found that she had accessed the former member's records as a result of error when trying to access another member's records, or the files were accessed by another employee when claimant mistakenly left her computer station unlocked.[41]  The Appeals Board held that TPMG had not proven misconduct and that Cole was not disqualified from benefits.[42]

Cole then filed suit in this court alleging that TPMG had violated Section 510 of ERISA.

**II.      LEGAL STANDARDS**

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[43] The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence

---

[35] *See* Docket No. 44 Ex. I.

[36] *See id.*

[37] *See* Docket No. 44 ¶ 6.

[38] *See* Docket No. 52 Ex. 2.

[39] *See id.* at ¶ 3.

[40] *See id.* Ex. 3, at 3.

[41] *See id.*

[42] *See id.* Ex. 3 at 5.

[43] Fed. R. Civ. P. 56(a).

6

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

of a triable issue of material fact.[44] If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[45] A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, to return a verdict for the nonmoving party.[46]  If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law."[47]

### III.    DISCUSSION

**A.    ERISA**

Cole claims that TPMG violated Section 510 of ERISA.  Section 510 of ERISA provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."[48]  To prevail, a claimant must show that employment was terminated due to the employer's specific intent to interfere with ERISA rights.[49]  In the context of summary judgment, courts must be particularly cautious where issues of intent or motivation are involved.[50]  At the same time, although summary judgment is generally inappropriate in actions involving state of mind, plaintiffs are not entitled to trial simply because they assert claims to which state of mind is a material element.[51]  "There must be some

---

[44] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[45] Fed. R. Civ. P. 56(e).

[46] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[47] *Celotex*, 477 U.S. at 323.

[48] 29 U.S.C. § 1140 (2006).

[49] *See Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990).

[50] *See Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F. Supp. 1315, 1319 (N.D. Cal. 1984).

[51] *See Dytrt*, 921 F.2d at 896; *Baker*, 608 F. Supp. at 1319 (citing *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976)).

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

indication that [they] can produce the requisite quantum of evidence to . . . reach the jury with a claim."[52]   Because there usually is no direct evidence of specific intent to interfere with ERISA rights, courts have held that the *Burdine/McDonnell Douglas* burden-shifting approach used in Title VII and ADEA cases is applicable.[53]

Under this approach, plaintiffs must first make a prima facie showing that there was (1) employer conduct (2) taken for the purpose of interfering with rights (3) to which an employee may become entitled.[54]   At that point, a presumption arises that the employer unlawfully discriminated and the burden of production shifts to the employer.[55]   The employer must then rebut this presumption by producing a legitimate, nondiscriminatory reason for his actions.[56]   If the employer is successful, the presumption dissolves.[57]   The burden moves back to the plaintiffs to produce evidence raising a genuine issue of material face that the defendant's reason was pretextual.[58]   A plaintiff must demonstrate pretext by either (1) directly persuading the court that the discriminatory reason more likely motivated the employer or (2) indirectly by showing the employer's proffered explanation is unworthy of credence.[59]

---

[52] *Dytrt*, 921 F.2d at 896.

[53] *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 457 (9th Cir. 1995); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (9th Cir. 1992); Dister v. *Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir. 1988).

[54] *See Humphreys*, 966 F.2d at 1043.

[55] *See Ritter*, 58 F.3d at 457; *Humphreys*, 966 F.2d at 1043; *Dister*, 859 F.2d at 1113.

[56] *See Dister*, 859 F.2d at 1113.

[57] *See id.*

[58] *See id.*

[59] *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2002).

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**B.      Prima Facie Case**

Cole sufficiently establishes a prima facie case by showing that she was discharged by TPMG just eighteen months prior to becoming entitled to additional benefits.  The first element of a prima facie case is satisfied by TPMG's conduct, when it terminated Cole's employment.  As to the second element of intent, at the prima facie stage, a plaintiff is not required to show that the employer's sole purpose in discharging was to interfere, but rather that it was "a motivating factor" in the decision.[60]  The Ninth Circuit has determined that proximity between the date of termination and the date at which benefits would have vested may provide enough evidence to support the existence of a prima facie case.[61]  "[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage."[62]

Cole was discharged eighteen months prior to June 3, 2012, when she would have qualified to receive higher retirement pension payments and retiree health insurance.  While most of the cases addressed by the Ninth Circuit involved shorter periods of time than that at issue, Cole has cited at least one case that suggests eighteen months is proximate enough at the prima facie stage to infer intent by TPMG to interfere with Cole's rights.[63]  As Cole would have otherwise been entitled to these benefits, the third element is satisfied and Cole has established a prima facie case; the burden shifts to TPMG to articulate a legitimate non-discriminatory reason.

---

[60] *See Humphreys*, 966 F.2d at 1043.

[61] *See Humphreys*, 966 F.2d at 1043 (finding inference of intentional activity where Humphreys was discharged four months before benefits would have vested and company had potential $550,000 savings). *See also Babich v. Unisys Corp.*, 842 F. Supp. 1343, 1355 (D. Kan. 1994) (finding discharge of well-qualified employee within two years of attaining benefits, in itself, suggests that Plaintiff's anticipated entitlement to retirement benefits was possibly a motivating factor in termination decision, even though resulting amount of cost savings to employer was unclear); *Huske v. Honeywell Intern., Inc.*, 298 F. Supp. 2d 1222, 1229 (D. Kan. 2004) (finding evidence of intent from a two week proximity).

[62] *See Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010).

[63] *See Babich*, 842 F. Supp. at 1355.

9

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    **Legitimate Reason**

TPMG maintains that Cole was fired for violating a company policy regarding access to member information, which satisfies its burden and rebuts the presumption of discrimination. Employers need not prove that the legitimate reason was the actual motivation; they need only articulate the reason.[64]   TPMG asserts that Cole was discharged because she accessed CIPS records of her husband on twelve different dates and the records of a former member, W.M., when no incoming calls had been received from either person on the Dedicated Line.  TPMG's RN Manager indicated that she believed Cole committed a knowing violation of company policy and had no credible explanation for entries into W.M.'s records.  TPMG has sufficiently articulated a legitimate reason to rebut the presumption of discrimination, and the burden of production shifts back to Cole to produce evidence of pretext.

D.    **Pretext**

At the pretext stage, plaintiffs may rely on both direct and circumstantial evidence.[65]  While the Ninth Circuit has held that circumstantial evidence must be "specific and substantial" to overcome legitimate reasons,[66] two cases have questioned the "specific and substantial" requirement.[67]  In *Cornwell v. Electra Cent. Credit Union*, the Ninth Circuit addressed *Desert Palace, Inc. v. Costa*, in which the Supreme Court held that in the context of summary judgment, a plaintiff relying on circumstantial evidence should not be required to produce more or better evidence than a plaintiff who relies on direct evidence.[68]  The court in *Cornwell* found that *Costa*

---

[64] *See Dister*, 859 F.2d at 1113.

[65] *See Dominguez*, 202 F.3d at 430.

[66] *See Aragon*, 292 F.3d at 659; *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

[67] *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030-31 (9th Cir. 2006); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091 (9th Cir. 2008).

[68] *See id.* (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

10

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

conflicted with the "specific and substantial" requirement.[69]  That being said, recent Ninth Circuit cases have "continued to rely on the 'specific and substantial' test after *Cornwell* with little discussion or controversy."[70]  Cole's record of good performance and the alleged proximity between the date she was discharged and the date her benefits would have vested are insufficient under this standard to support an inference of pretext.

Cole states that she has never been disciplined or reprimanded while employed with TPMG. Although the Ninth Circuit has suggested that evidence of good performance by the plaintiff may undermine performance reasons for termination,[71] Cole was discharged for violating the company's confidentiality policy, not because she was performing inadequately at the Call Center. Cole also submits a list obtained from TPMG of nurses who were not terminated and received more lenient punishments for violation of medical privacy policies.  Disparate treatment of employees for violation of the same policy can show pretext and demonstrate that the proffered reason was unworthy of credence.[72]  However, Cole's list[73] does not include any call center advice nurses or include a list of nurses who *were* terminated for privacy violations.  Without knowing the ratio of nurses who received more lenient punishments or the circumstances for these policy violations, this evidence does not support an inference that TPMG's reason was pretextual.

---

[69] *See id.*

[70] *See Moore v. Potter*, 701 F. Supp. 2d 1171, 1185-86 (D. Or. 2010) (citing *Nilsson v. City of Mesa*, 503 F.3d 947, 953-55 (9th Cir. 2007)); *Metoyer v. Chassman*, 504 F.3d 919, 930-31 (9th Cir. 2007); *E.E.O.C. v. The Boeing Co.*, 577 F.3d 1044 (9th Cir. 2009).

[71] *See Dominguez*, 202 F.3d at 433

[72] *See Sanchez v. Corrections Corp. of America*, Case No. CV-06-0152 AWI DLB, 2007 WL 1390675, at *6 (E.D. Cal. May 9, 2007); *Thygeson v. U.S. Bancorp*, Case No. CV-03-467-ST, 2004 WL 2066746, at *9 (D. Or. Sept. 15, 2004).

[73] *See* Docket No. 44, Exh. I.

11

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12

While Cole alleges subjective confusion as to company policy regarding oral or written permission and an ambiguous slide used in company training, this evidence does not actually show error or falsity in TPMG's legitimate reason and therefore cannot support an inference of pretext. Pretext may be inferred when a defendant provides inconsistent and contradicting reasons for the termination,[74] or when the "asserted neutral basis was so ridden with error that the employer obviously could not honestly have relied on it."[75]  In judging whether a defendant's proffered reason is false, it is not important whether it was objectively false; rather, courts only require that an employer honestly believed its reason for its action, even if its reason is trivial or even baseless.[76]  "In addition, a plaintiff cannot establish a genuine issue of material fact exists by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted."[77]

13
14
15
16
17
18
19
20
21
22

Even if Cole believed an ambiguity existed in one of TPMG's training exercises, TPMG's written policies and reminders which flashed on the computer screen evidence the company's belief that written permission was required to access information of a relative.  Also, regardless of what type of permission was actually required, Cole has not provided evidence that she had any form of permission from W.M., whose records she also accessed.  TPMG discharged Cole based on its belief that she had violated company policy in accessing W.M.'s records without permission; therefore, pretext cannot be inferred based on Cole's subjective confusion and the ambiguity of one exercise.

23
24

Cole's argument that the previous decision by an Administrative Law Judge ("ALJ") for the California Unemployment Insurance Appeals Board ("CUIAB") should be admitted to support

25
26
27
28

---

[74] *See Villiarimo*, 281 F.3d at 1063.

[75] *Dister*, 859 F.2d at 1113.

[76] *See Villiarimo*, 281 F.3d at 1063.

[77] *See Moore v. Potter*, 701 F. Supp. 2d 1171, 1178 (9th Cir. 2010).

12

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

illegal animus is unavailing.  Case law does support admission of this type of evidence if it is relevant and not unduly prejudicial;[78] however, in those cases the previous CUIAB decision specifically found facts that pointed to whether the defendant's proffered reason was pretextual.

The CUIAB in Cole's case had to determine whether her actions amounted to misconduct.[79] Misconduct is defined as "substantial breach by claimant of an important duty or obligation that was willful or wanton in character, and tending to injure the employer."[80]  The CUIAB specifically found that Cole's conduct reflected, at worst, instances of negligence and that TPMG had failed to meet their burden of proof.[81]  Whether Cole breached an obligation in a willful manner matters little when the real issue here is whether TPMG believed that Cole had violated company policy and acting on that belief, terminated her employment.  The ALJ's decision suggests that Cole was negligent and does not speak to any discriminatory animus on TPMG's part.[82]  Cole has not offered sufficient evidence showing a material fact in dispute regarding TPMG's motives for discharging her.

As to her proximity argument, Cole's theory is unavailing.  Cole relies on *Babich v. Unisys*, in which the court found two years to be sufficiently proximate to support an inference of pretext. *Babich* appears to be an outlier,[83] and its facts are distinguishable.  The court in *Babich* found two

---

[78] *See Baldwin v. Rice*, 144 F.R.D. 102, 107 (E.D. Cal. 1992); *Evans v. Housing Authority of City of Benicia*, Case No. 2:07-CV-0391 JAM EFB, 2008 WL 41777299, at *8 (E.D. Cal. Sept. 8, 2008).

[79] *See* Docket No. 52 Exh. 3 at 5.

[80] *See id.*

[81] *See id.*

[82] *See id.*

[83] *See Humphreys*, 966 F.2d at 1043 (finding inference of intentional activity where Humphreys was discharged four months before benefits would have vested and company had potential $550,000 savings). *See also Dister*, 859 F.2d at 1113; *Huske*, 298 F. Supp. 2d at 1229 (finding evidence of intent from a two week proximity); *Echols v. Lokan & Associates, Inc.*, Case No. CV-06-293-ST, 2007 WL 756691, at *13 (D. Or. March 7, 2007) (finding a two day proximity was not enough to infer pretext).

13

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

years to be proximate at the prima facie stage.[84]  This proximity was afforded little attention at the

pretext stage, where the court briefly mentioned that it was considered in conjunction with the

plaintiff's affidavits and deposition testimony, which also cast doubt on the defendant's legitimate

reasons.[85]  In contrast, Cole has provided no evidence suggesting a disputable issue of pretext other

than an eighteen month proximity, which the court has determined is outside the majority of

existing case law.

    In sum, Cole has not raised a triable issue of disputed fact and so summary judgment in

TPMG's favor is warranted.  TPMG's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: April 17, 2013

                                        *Paul S. Grewal*
                                        PAUL S. GREWAL
                                        United States Magistrate Judge

---

[84] *See Babich*, 842 F. Supp. at 1355.

[85] *See id.* at 1357.

14

Case No.: 11-05378 PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California